## W. P. HIGGINBOTHAM v. SILVESTER FAIR.

1. VERDICT, *When Not Set Aside by Supreme Court.* A verdict being based upon conflicting testimony and coming with the indorsement of the trial court, cannot be set aside by the supreme court, although the testimony may seem to that court to preponderate against the verdict.

2. EXCEPTION, *Not Made to Improper Cross-Examination.* The improper cross-examination of a witness, or the reception of incompetent testimony where no objection is made or exception taken, is no ground for the reversal of a judgment.

*Error from Wabaunsee District Court.*

ACTION by *Higginbotham* against *Fair,* to recover upon two promissory notes. July 13, 1885, judgment was rendered

for defendant. The plaintiff brings the case here. The opinion states the material facts.

*Green & Hessin,* for plaintiff in error.
*Geo. G. Cornell,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: W. P. Higginbotham sued Silvester Fair on two promissory notes alleged to have been executed by him on the 29th day of August, 1883, in favor of the Jacksonville Sulky Plow Works, or bearer, each for $150, one of which was payable on the first day of May, 1884, and the other one the first day of June, 1884. Fair denied under oath that he executed the notes sued on, and this was the principal question upon which evidence was received. The trial resulted in favor of the defendant, and the plaintiff brings the case here, alleging as the principal error that the verdict is not justified by the evidence. The testimony on the part of the plaintiff is to the effect that the notes were given by Fair to the Jacksonville Sulky Plow Works in part payment on sixty sulky plow attachments, which Fair had contracted to purchase. Two agents, who sold attachments to Fair, testified that they witnessed Fair sign the notes sued upon. Higginbotham testified that soon after he purchased the notes he notified Fair of the purchase, in response to which Fair called upon him, and upon an examination of the notes said they were all right, but that he had an impression that they came due at a later time. Sam Kimble, an attorney for Higginbotham, testified that he presented the notes to Fair and requested payment, and that Fair became angry, and insisted that the Jacksonville Sulky Plow Works had not complied with the contract made with him when the notes were given, but he admitted that the signatures to the notes were his genuine signatures. In addition to the testimony of these witnesses, several others were called as experts, who stated that they believed the signatures attached to the notes to be the genuine signatures of Silvester Fair. As against this, Fair testified that he never signed or delivered the notes in suit, although

he does say that the signatures look like his own, and that on August 29, 1883, he executed notes which were similar to these, except that they were not payable until January 1, 1885. He denied that he admitted to either Higginbotham or Kimble that he had signed the notes in controversy, or had recognized their genuineness. The testimony of the plaintiff was contradicted in several other particulars of minor importance. While the evidence seems to us to greatly preponderate in favor of the plaintiff, it will be seen from the foregoing review that there was testimony upon which to found a verdict in favor of the defendant. Under a venerable rule of this court, we cannot weigh the testimony to determine where the preponderance is, and the verdict, supported as it is, and coming here with the approval of the trial court as it does, cannot be set aside for insufficiency of the evidence. (*K. P. Rly. Co. v. Kunkel,* 17 Kas. 145; *U. P. Rly. Co. v. Diehl,* 33 id. 422.)

Another matter complained of is, that the court permitted the witnesses of the plaintiff, who had testified as experts concerning the genuineness of the signatures attached to the notes, to be examined upon other signatures written by defendant's counsel, which were exhibited to the witnesses through a slot cut in a paper, and thus concealed all except the signature exhibited. The fictitious signatures were thus used on cross-examination, probably with a view of testing the accuracy of the experts; but if it is conceded that the testimony was inadmissible, still the plaintiff is not in a position to complain. This method of cross-examination proceeded without any objection being made or exception being taken by the plaintiff. Afterward, when the defendant proposed to show that some of the signatures which the experts said were written by the same person who signed the notes, had been written by his counsel and an objection was made, the court excluded the testimony and stated that none of the signatures upon which the witnesses were examined would be allowed to go to the jury except such as were genuine.

The judgment of the district court must be affirmed.

All the Justices concurring.